IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ELMER SALMERON, )<br>   Petitioner, )<br>vs. )<br>)<br>LORIE DAVIS,¹ Director, )<br>Texas Department of Criminal )<br>Justice, Correctional Institutions Division, )<br>   Respondent. ) | No. 3:15-CV-3167-M-BH<br><br>Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I. BACKGROUND**

Elmer Salmeron (Petitioner) challenges his conviction for delivery of more than 400 grams of a controlled substance. The respondent is Lorie Davis (Respondent).

**A.  Investigation**²

As part of an investigation into illegal drug sales, Dallas police officers Andrew Ortiz and Noel Carrasco arranged to meet Edwin Benitez on September 28, 2010 at his apartment to negotiate the purchase of a kilogram of cocaine and a kilogram of methamphetamine. Petitioner, who was in the apartment with Benitez when Officers Ortiz and Carrasco arrived, introduced himself as "Flaco" and participated in the conversation. Officer Carrasco secretly recorded the negotiations.

---

¹ Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

² The summary of the evidence at trial is taken from the state appellate court's opinion. *See Salmeron v. State*, 05-12-00360-CR, 2013 WL 1320509 at *1-3 (Tex. App. – Dallas March 27, 2013).

After the officers agreed to a price for the drugs, Benitez proposed that the drug transactions be done separately, with the methamphetamine purchase to occur first. Benitez would deliver the methamphetamine to Officer Ortiz at a car wash. After Officer Ortiz saw the methamphetamine, he would call Officer Carrasco, who would take the money to the apartment and meet Petitioner to count the money.

The methamphetamine transaction was scheduled for October 4, 2010. Officer Ortiz met Benitez at the car wash, and Officer Carrasco parked in the vicinity of the apartment so that he could identify Petitioner to the response team. Benitez had 982 grams of methamphetamine in a container in the front seat of his car. After Officer Ortiz saw the methamphetamine, he notified police officers to arrest Benitez and search the apartment.

Dallas police officers Keith Tyler and Terrell McNeil were conducting surveillance on Benetiz's apartment. They saw Petitioner drive a white Cadillac into the apartment complex and then go into the apartment. Petitioner came out of the apartment with a white plastic bag in his hand, placed it on the backseat of the Cadillac, went back upstairs, and stood on the balcony outside the apartment talking on a cellphone. Petitioner then came downstairs and was arrested in the parking lot. Officer Tyler searched the car and found a homemade press, commonly used to compress cocaine, in the white bag on the backseat of the car. In the apartment, the police found three guns, a lease for the apartment in Petitioner's name, and paperwork relating to drug transactions.

Benitez and Officers Ortiz and Carrasco all testified that Petitioner was a party to the negotiations and agreed to play a role in the drug transaction. Petitioner testified he was at the apartment only to have a discussion with Benitez concerning an unpaid electric bill, and he denied any involvement in the drug transaction.

B.   **Arrest and Search Warrants**

Officers Ortiz, Carrasco, Tyler, and McNeil all testified about the arrest and search warrants. The affidavit in support of the arrest warrant indicated that it was subscribed and sworn to before the magistrate by Officer Ortiz on October 4, 2010. The evidentiary affidavit completed by Officer Ortiz in support of the search warrant had "Oct 04 2010" stamped under his name, but it stated that it was subscribed and sworn to before the magistrate on October 29, 2010. An operations report of activities indicated that the warrants were obtained on October 10, 2010.

Officers Ortiz and Carrasco testified that on October 4, they obtained a search warrant for the apartment, a seizure warrant for Benitez's car, and arrest warrants for Petitioner and Benitez. Officer Ortiz testified the search and arrest warrants were signed on October 4th, not October 10th; the October 10th date in the operations report was incorrect. According to Officer Carrasco, the October 10th date in the operations report "could possibly have been a typo on a date." He was certain that "it did not happen on the 10th. It happened on the 4th." He speculated that the magistrate signed the search warrant affidavit on October 29th because that was the date he "actually approved and reviewed each document." He testified "that's what I'm guessing happened because I do know that we went and visited with him and he reviewed each document before it was signed," and that he believed "that's why the stamp is there for October 4th." He found out Petitioner's true identity on the day of his arrest, October 4th. He was not the affiant on the arrest warrant and did not know how Officer Ortiz identified Petitioner for purposes of the arrest warrant. Officer Ortiz was not questioned about how he identified Petitioner for the arrest warrant affidavit.

Officer Tyler testified that there was a search warrant for the apartment. Officer McNeil testified that there was an arrest warrant "for the individual associated with that apartment," and it

3

was his job to notify the "takedown team" of any person coming and going from that apartment so that the person could be detained and possibly identified as the individual subject to the arrest warrant. According to Officer McNeil, there was also a search and seizure warrant for the Cadillac.

After the State rested its case in chief at trial, the trial court held a suppression hearing. Defense counsel argued that the officers did not know Petitioner's identity before the arrest, but Petitioner was identified in the arrest warrant affidavit. He also contended that the search warrant was signed on October 29th.

The trial court judge reviewed the search warrant, found that it was issued at 8:30 a.m. on October 4th, and stated: "I don't know how that 29th got in there or not. It's clerical error or brain—whatever. But I—I'm not sure I understand exactly what you're trying to suppress. What your point is, the arrest warrant, your argument there, I understand, is it has the name of the defendant in it." Trial counsel responded, "Before they found out who the defendant is." The trial court agreed there had been testimony to that effect, but that it was not sure that the testimony made the arrest warrant invalid. Counsel then stated that there was no need to go forward on the motion to suppress, but he wanted "a limiting instruction if the Court considers that affidavit is incorrect or don't [sic] meet the status for the Court to issue a limiting instructions [sic] as to any evidence obtained in reference to the search and the arrest warrant that he [sic] cannot be attributed to the defendant." The trial court indicated that it would take up that request at the charge conference and "may or may not give something."

The jury charge prepared by the trial court did not contain an instruction under article 38.23 of the Texas Code of Criminal Procedure regarding whether evidence was obtained illegally. Counsel did not object that the charge did not include the instruction or make another request for

4

an instruction.

C. <u>**Verdict and Post-conviction Proceedings**</u>

The jury convicted Petitioner of delivering more than 400 grams of methamphetamine, and he was sentenced to fifteen years' imprisonment and a $15,000 fine. The judgment was subsequently modified to show the correct offense of conviction and was affirmed on appeal. *Salmeron*, 2013 WL 1320509.

Petitioner's petition for discretionary review was refused. *Salmeron v. State*, PD-479-13 (Tex. Crim. App. June 12, 2013). He did not file a petition for writ of certiorari. Petitioner's first state habeas application was filed on April 2, 2014, and it was dismissed as noncompliant with appellate rules on June 11, 2014. (Docs. 10-20 at 6; 10-17.) *See Ex parte Salmeron*, WR-81,503-01 (Tex. Crim. App. June 11, 2014). He filed a second state habeas application on July 31, 2014. (Doc. 10-21 at 5.) On August 26, 2015, the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court. (Doc. 10-30); *see Ex parte Salmeron*, No. WR-81,503-02 (Tex. Crim. App. Aug. 26, 2015).

D. <u>**Substantive Claims**</u>

Petitioner's habeas petition, filed on September 30, 2015, contends that trial counsel was ineffective because he failed to request an article 38.23 instruction concerning the legality of the search. (*See* doc. 1 at 5.) Respondent filed a response on December 15, 2015. (*See* doc. 11.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

5

Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

6

where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner claims that his trial counsel was ineffective for failing to request a jury instruction under Texas Code of Criminal Procedure article 38.23 regarding the legality of the search.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address

7

the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the Petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not

raise a constitutional issue in a federal habeas proceeding").

On appeal, Petitioner alleged ineffective assistance of counsel for failing to request an article 38.23 instruction. The state appellate court set out the state law regarding article 38.23 instructions. *Salmeron*, 2013 WL 1320509 at *4. When there is a fact issue regarding the manner in which the evidence was obtained, article 38.23(a) requires the trial court to submit the question to the jury with an instruction that, if the jurors find that the evidence was obtained in violation of the law, they are not to consider it in reaching their verdict. Tex. Code Crim. Proc. Ann, art. 38.23(a); *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). To be entitled to an article 38.23(a) instruction, a defendant must show (1) the evidence heard by the jury raised an issue of fact; (2) the evidence on that fact was affirmatively contested; and (3) the contested factual issue was material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

The appellate court noted that the arrest warrant was dated October 4, 2010, but the operations report stated that it was obtained on October 10, 2010. Although it named Petitioner, Officer Carrasco testified that he did not know Petitioner's name until after the arrest. *Id*. He was not the affiant for the affidavit in support of the arrest warrant, however. Officer Ortiz, the affiant, was not asked at trial about how he knew Petitioner's name for the affidavit. The affidavit and arrest warrant were dated October 4, 2010. Officers Ortiz and Carrasco testified that the operations report incorrectly stated that the arrest warrant was obtained on October 10, 2010. The court also noted that Petitioner's arrest did not lead to the seizure of any evidence. It concluded that Petitioner was not entitled to an article 38.23 instruction regarding the validity of the arrest warrant. *Id*. at *5.

The search warrant indicated that it was issued at 8:30 a.m. on October 4, 2010. Officers

9

Ortiz and Carrasco testified that the October 10, 2010 date in the intelligence report was incorrect. Officers Ortiz, Carrasco, Myers, and McNeil all testified that the warrant was issued prior to the search. Officer Carrasco speculated that the district judge wrote October 29, 2010 on the search warrant affidavit because that was when the district judge "actually approved and reviewed each document." He testified "that's what I'm guessing happened because I do know that we went and visited with him and he reviewed each document before it was signed" and that he believed "that's why the stamp is there for October 4th." Petitioner did not affirmatively challenge or contest the reasonableness of these explanations. The appellate court concluded that the differing dates and the proffered explanations with respect to the dates did not raise an issue of fact that would have entitled Petitioner to an article 38.23 instruction regarding the validity of the search warrant. *Id*. at *5.

Because Petitioner was not entitled to an article 38.23 instruction, the court held that counsel's performance was not deficient in failing to request that instruction. *Id*. at *5. The court also held that Petitioner did not show prejudice because he did not develop facts and details concerning when and how the search warrant was obtained sufficient to conclude that the warrant was invalid, and he did not show that the jury would have found in his favor under article 38.23. *Id*. at *6. Moreover, the evidence included Officers Ortiz's and Carrasco's testimony about Petitioner's participation in the negotiations to purchase the narcotics, the recording of the negotiations, Benitez's testimony incriminating Petitioner in the drug deal, Benitez's delivery of the methamphetamine to Ortiz, and Petitioner's presence at the apartment at the time the money for the drug transaction was to be delivered. In light of the overwhelming evidence of guilt, the appellate court concluded that Petitioner did not meet his burden of establishing that there is a reasonable probability that the result of the case would have been different if counsel had requested an article

38.23 instruction. *Id*.

Petitioner's second state habeas application also raised the same issue of ineffective assistance of counsel for failing to request an article 38.23 instruction. (*See* doc. 10-21 at 10.) The state habeas court concluded that Petitioner was not entitled to an article 38.23 instruction for the reasons set out in the appellate opinion. (*See* doc. 10-29 at 7-8.) The Court of Criminal Appeals denied the habeas application on the findings of the trial court.

Whether a defendant is entitled to an article 38.23 instruction is a matter of state law. *See Satchell v. Director*, No. 6:08CV360, 2011 WL 4401368 (E.D. Tex. Aug. 22, 2011), *rec. adopted*, 2011 WL 4402364 (E.D. Tex. Sept. 20, 2011). A state court's interpretation of state law is not to review on federal habeas. It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir.1995); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). When a federal habeas claim concerns ineffective assistance of counsel for failure to request a jury instruction, and the entitlement to the instruction is a matter of state law, a state court's determination that the petitioner was not entitled to that instruction is conclusive on the state law aspect of the claim. *Blanton v. Quarterman*, 489 F. Supp. 2d 621, 657-58 (W.D. Tex. 2007). Here, the state court's determination that Petitioner was not entitled to an article 38.23 instruction as a matter of state law is binding regarding that state law aspect of Petitioner's claim of ineffective assistance of counsel.

Because Petitioner was not entitled to an article 38.23 instruction, any request would have

been futile, because the request would have been denied. Counsel was not ineffective for failing to make a meritless request for an article 38.23 instruction. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections"). Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## IV. EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary. Petitioner has not shown he is entitled to an evidentiary hearing.

## V. RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 21st day of August, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                  IRMA CARRILLO RAMIREZ
                                              UNITED STATES MAGISTRATE JUDGE